**THREE GUYS REAL ESTATE v. HARNETT COUNTY**

[122 N.C. App. 362 (1996)]

―――――――――

THREE GUYS REAL ESTATE, a North Carolina General Partnership, Plaintiff and Petitioner v. HARNETT COUNTY, a body politic, GEORGE JACKSON, in his official capacity as Harnett County Planning Director, and THOMAS TAYLOR, in his official capacity as Harnett County Subdivision Administrator, Defendants

No. COA95-498

(Filed 7 May 1996)

**Zoning § 19 (NCI4th)— plat map for subdivision—authority of defendant to disapprove**

The conclusions and decree of the trial court that a plat map of plaintiff's 231-acre tract was not exempt from the Harnett

County Subdivision Regulations were invalid, since the Regulations provided that a plat map which divided a tract of land into parcels consisting of ten or more acres and specifically appropriated for the public access to the proposed parcels was subject to the regulations; defendants admitted that plaintiff's plat map did not show dedicated rights of way; notwithstanding such admission, the trial court found that the series of private driveway easements by which plaintiff intended to provide access to its subdivision lots and which were to be maintained pursuant to a driveway maintenance agreement were "for all intents and purposes . . . open for public use"; and there was no evidence whatsoever in the record to support such finding. However, the trial court's findings that plaintiff's planned subdivision would endanger the public health, safety, and welfare because access to the lots for such county services as law enforcement, fire, or rescue operations would be prohibitive or inadequate were supported by evidence and supported a conclusion that plaintiff's property was subject to defendant county's jurisdiction and that the county was not required to approve plaintiff's plat map of the named subdivision.

**Am Jur 2d, Zoning and Planning §§ 556-561.**

Appeal by plaintiff from judgment entered 3 January 1995 by Judge Robert L. Farmer in Harnett County Superior Court. Heard in the Court of Appeals 20 February 1996.

*Grainger R. Barrett for plaintiff-appellant.*

*Dwight W. Snow for defendant-appellees.*

MARTIN, John C., Judge.

Plaintiff is the owner of an undeveloped tract of real property containing approximately 231.37 acres located in Harnett County, North Carolina. In late 1993, plaintiff submitted a plat map of the property, dated 27 April 1993, to the Harnett County Planning Department. This map showed a proposed subdivision entitled "Weswood 4" containing twenty-three parcels, each of which was in excess of ten acres. Plaintiff requested that the Planning Department certify the map as exempt from Harnett County's Subdivision Regulations so that the map could be recorded with the Harnett County Register of Deeds. The map was denied exemption by Thomas Taylor, Harnett County's Subdivision Administrator; the Harnett

County Planning Board; and the Harnett County Board of Commissioners. The reason given for the denial was that the map showed no road access to the parcels.

Thereafter, plaintiff brought this action seeking (1) a declaratory judgment that the plat map of the Weswood 4 subdivision is exempt from Harnett County's Subdivision Regulations and (2) a writ of mandamus directing Mr. Taylor to certify the map as exempt from the regulations. After filing this action, plaintiff submitted a "revised" plat map of the Weswood 4 subdivision which showed a series of easements providing access to the parcels.

The trial court found the facts to be essentially as summarized above and made the following additional findings of fact:

11. Officials of the plaintiff claim that they intend to provide access to the various Weswood 4 subdivision lots with a series of private driveway easements to be maintained pursuant to a driveway maintenance agreement. However, even if such a network of easement roads became a reality, the roads for all intents and purposes would be open for public use.

12. Any access to the various subdivision lots is currently a dirt roadway from SR 1103 through Lot 6 of the Weswood 1 Subdivision and through Lot 36 of Weswood 4 to a T intersection which branches out into a series of unimproved timber cart paths which do not service each and every lot depicted on the Weswood 4 map.

13. Access to the 23 lots of Weswood Subdivision for county services such as law enforcement, fire or rescue operations would be prohibitive and inadequate. This lack of access condition would provide a dangerous environment for providing county emergency services for the benefit of any Harnett County residents of these prospective lots unless better access was planned or provided by the plaintiff developer.

14. The Subdivision plan map submitted by the plaintiff is in direct opposition to generally accepted principles of land use planning. The purpose of the Harnett County Subdivision Ordinance would be circumvented as far as the promotion of public health, safety and general welfare of the County if the Weswood 4 Subdivision plat was developed in its current form.

Based on its findings, the court concluded as a matter of law:

1. That the Weswood 4 tract as depicted on that plat dated April 27, 1993 by Mike Cain, RLS is subject to the Harnett County Subdivision authority.

2. The Weswood 4 plat is not exempt from the Harnett County Subdivision regulations.

3. That under the circumstances of this case, the Harnett County Subdivision Administrator does not have a mandatory duty to affix to the Weswood 4 Plat the Harnett County Planning Department Certificate that the Weswood 4 Plat is exempt from the Harnett County Subdivision Regulations.

The court then ordered, adjudged and decreed "[t]hat the Weswood 4 tract . . . is subject to the Harnett County Subdivision authority and further said plat is not exempt from the Harnett County Subdivision Regulations." Plaintiff appeals.

Plaintiff has assigned error to the foregoing findings of fact, conclusions of law, and entry of judgment. "All orders, judgments and decrees in an action for declaratory judgment may be reviewed as other orders, judgments and decrees." *Hobson Construction Co. v. Great American Ins. Co.*, 71 N.C. App. 586, 589, 322 S.E.2d 632, 634 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985), (citing N.C. Gen. Stat. § 1-258 (1983)). Thus, the scope of our review is (1) whether there was competent evidence in the record to support these findings of fact, and (2) whether these findings justify the court's legal conclusions. *Insurance Co. v. Allison*, 51 N.C. App. 654, 277 S.E.2d 473, *disc. review denied*, 303 N.C. 315, 281 S.E.2d 652 (1981).

Section 3.0(1) of the Harnett County Subdivision Regulations, which were enacted pursuant to Chapter 153A of the North Carolina General Statutes, provides, in pertinent part:

Section 3.0 General (As Amended 11-1-82 11-15-82, 4-16-90)

1. All subdivisions of land . . . within the subdivision jurisdiction of Harnett County shall hereafter conform to the procedure contained within the articles of this Ordinance. This Subdivision Regulation Ordinance requires that a plat be prepared, approved, and recorded pursuant to the provisions of this Ordinance whenever a subdivision of land takes place . . . .

The regulations define "subdivision" as including:

. . . [A]ll divisions of a tract or parcel of land into two or more lots, building sites, or other divisions for the purpose whether immediate or future, of sale or building development, and shall include all divisions of land involving the dedication of a new street or a change in existing streets; . . .

However, an exception to this definition is "[t]he division of land into parcels greater than ten (10) acres where no street right-of-way dedication is involved." Although the regulations do not define the words "right-of-way" or "dedication", the word "street" is denoted as "[a] dedicated and accepted public right-of-way for vehicular traffic." Thus, it is apparent that a plat map which (1) divides a tract of land into parcels consisting of ten or more acres and (2) specifically appropriates for the public, access to the proposed parcels is *subject* to the regulations.

In this case, defendants admitted that plaintiff's plat map of the Weswood 4 subdivision "does not show dedicated rights of way from SR 1103 [the only marked road located near, but not providing any direct access to, twenty-two of the twenty-three parcels] . . . ." Notwithstanding such admission, the trial court, in its finding of fact #11, found that the series of private driveway easements, by which plaintiff intends to provide access to the various Weswood 4 subdivision lots and which were to be maintained pursuant to a driveway maintenance agreement, were "for all intents and purposes . . . open for public use." This finding was in error, for there was no evidence whatsoever in the record to support such finding. Hence, the conclusions and decree of the trial court that the plat map is not exempt from the Harnett County Subdivision Regulations are invalid.

This determination, however, does not end our inquiry and does not require us to vacate the trial court's judgment. A municipal planning board is not obliged to approve a subdivision merely because it is exempt from the local subdivision ordinance. In *Sugarman v. Lewis*, 488 A.2d 709 (1985), landowners brought a petition for declaratory judgment seeking a declaration that their real property was not within the town of Exeter, Rhode Island's subdivision ordinance. They had been told "informally" by the town that their plat map of the property would constitute an illegal subdivision and they would not be able to secure the necessary single-family dwelling building permits. Each of the parcels had been divided for the purpose of sale into lots that were to connect to a previously constructed

**THREE GUYS REAL ESTATE v. HARNETT COUNTY**

[122 N.C. App. 362 (1996)]

road by a strip of land varying in width from ten to twenty feet. The trial court decided adversely to landowners and they appealed.

On appeal, the landowners contended that the town's planning board did not have jurisdiction over the proposed plat map because each of the lots as shown was over one acre in size and had some access to an existing public road. In essence, the landowners argued, similarly to plaintiff's contention in this case, that the lots did not fall within the statutory definition of "subdivision" and therefore, did not qualify as a subdivision under the town's ordinance.

Examining the statute at issue, the Rhode Island Supreme Court found that it was clear and unambiguous, and only subjected the sale of real estate to the jurisdiction of the town's planning board when access to the newly created parcels would require the construction of a street. *Id.* Thus, it pronounced, "[s]tanding alone, this interpretation would suggest that the proposed plat does not constitute a subdivision within the meaning of § 45-23-1 [the statute in question] because the subject lots did have access to a public road." *Id.* at 711.

However, the Court's analysis of the case did not end there. It observed that a statute, even though clear and unambiguous, should not be interpreted literally when such a construction would lead to a result at odds with the legislative intent. *Id.* The Rhode Island legislature, the Court noted, had explicitly stated that the subdivision rules at issue were intended to empower local governments to promote the general health, safety, morals or general welfare of the community. *Id.* Thus, the Court, affirming the trial court's judgment, held:

When we read the subdivision act as a whole, we view the clause "in such a manner as to require provision for a street" as a mechanism to alert the municipality when the proposed development is to be of such dimension as to have a substantial impact on municipal services and the general welfare of the community. In this way, the municipality can take whatever steps are necessary to ensure that the general health and welfare of its citizens and the development of the proposed plat are consonant. The trial justice in the instant case found as fact that the plan prepared by plaintiffs was an attempt to circumvent the subdivision requirement and that is was obvious from the plat maps that in order to protect the general health, welfare, and safety of the community, a street was required . . . .

. . . We find that plaintiffs have failed to show that the trial justice overlooked or misconceived material evidence or was clearly wrong.

An examination of the plat map suggests that the provisions for the access roads constitute a potential traffic and fire hazard. It is apparent that a better system is required to benefit the general community and the lot owners themselves. We therefore conclude that the property comes within the provisions of the subdivision's regulations and are subject to the planning board's jurisdiction.

*Id.* at 712.

We think the rationale employed by the Rhode Island Supreme Court in *Sugarman* can be equally applied to the situation now before us. In enacting legislation governing the control of subdivisions by counties, our General Assembly has sought to empower such local governments to promote the health, safety and welfare of communities, *see* N.C. Gen. Stat. § 153A-1 *et seq.* (1991), and has adopted as policy that a county's power "shall be construed to include any powers that are reasonably expedient to the exercise of the power." This objective is more specifically articulated in G.S. § 153A-331:

A subdivision control ordinance may provide for the orderly growth and development of the county; for the coordination of streets and highways within proposed subdivisions with existing or planned streets and highways and with other public facilities; for the dedication or reservation of recreation areas serving residents of the immediate neighborhood within the subdivision and of rights-of-way or easements for street and utility purposes including the dedication of rights-of-way pursuant to G.S. 136.66.10 or G.S. 136-66.11; and for the distribution of population and traffic in a manner that will avoid congestion and overcrowding and will create conditions essential to public health, safety, and the general welfare . . . .

Moreover, our Supreme Court has likewise scrutinized the effect of a proposed land use on the health, safety and welfare of a community in reviewing decisions of local zoning boards with respect to applications for special use permits. *See Woodhouse v. Board of Commissioners*, 299 N.C. 211, 261 S.E.2d 882 (1980) (developers' application for special use permit was improperly denied where the developers had met the local minimum requirements for a planned

unit development *and* where there was no contrary showing that the planned project would impermissibly compromise the health, safety or welfare of the community). Thus, we hold that even though plaintiff's plat map may not fall within the definition of "subdivision" contained in Harnett County's Subdivision Regulations, defendants are not required to approve the map for plat recordation if plaintiff's proposed use of its land as shown thereon would be a danger to the health, safety and welfare of the community.

In this case, the trial court, by findings of fact #12, #13 and #14, found that the Weswood 4 subdivision as planned would endanger the public health, safety and welfare because access to the lots for such county services as law enforcement, fire or rescue operations would be "prohibitive and inadequate." These findings are supported by the testimony of Harnett County's Sheriff, Emergency Services Director, and Planning Director, and therefore, support a conclusion that plaintiff's property was subject to the defendants' jurisdiction and that defendants were not required to approve plaintiff's plat map of the Weswood 4 subdivision. *See Hinson v. Jefferson*, 287 N.C. 422, 215 S.E.2d 102 (1975) (where the trial court's findings of fact permit, an appellate court may make its own conclusions of law but affirm the trial court, as modified). The judgment of the trial court, as modified herein, is affirmed.

Modified and affirmed.

Judges JOHNSON and McGEE concur.