*574 Order, Supreme Court, Bronx County (Larry S. Schachner, J.), entered on or about July 7, 2008, which, to the extent appealed from, denied the motion of defendant New York Yankees for summary judgment dismissing the complaint as against it, unanimously affirmed, without costs.
During the 2000 baseball season, plaintiff was employed as a security guard at Yankee Stadium, assigned to sit on a stool in the field level of the stands, directly behind home plate. Although that section was protected from batted or thrown balls by backstop screening, plaintiffs right hand was struck and fractured by a foul ball. Plaintiff alleges that the ball was able to get through to him because a window in the netting had been opened to allow placement of a television camera operated by defendant ESPN, and an electrician employed by third-party defendant PEM Electrical Corp. negligently failed to tightly clip the netting around the camera.
The proprietor of a ball park is not required to protect all spectators, but “need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest” (Akins v Glens Falls City School Dist., 53 NY2d 325, 331 [1981]). Such screening must be “of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game” (id.; see Davidoff v Metropolitan Baseball Club, 61 NY2d 996 [1984]). Since “even after the exercise of reasonable care, some risk of being struck by a ball will continue to exist,” a factual question for the jury would be presented “where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue” (Akins, 53 NY2d at 331). In this case, although the Yankees demonstrated that screening was in place in the required area, it did not establish as a matter of law that such screening provided adequate protection to spectators and employees situated in the danger zone behind home plate during nationally televised games.
Nor did the Yankees establish that they did not retain the *575 PEM electrician who assisted the ESPN cameraman during the game, and the record contains conflicting evidence on that issue. Although owners generally are not vicariously liable for negligence on the part of an independent contractor (see Kleeman v Rheingold, 81 NY2d 270, 273 [1993]), the Yankees, as the proprietor of a place of public assembly, have “a nondelegable duty to provide the public with a reasonably safe premises,” and “the duty to provide [their] employees and the employees of independent contractors with a safe place to work” (Backiel v Citibank, 299 AD2d 504, 505, 507 [2002]).
The assumption-of-risk doctrine also presents issues of fact for a jury (see Maddox v City of New York, 66 NY2d 270, 278 [1985]). Although the risk of being hit by an errant ball is inherent in the sport of baseball, spectators and employees at a ball park cannot be deemed to have assumed the risk that the proprietor will fail to comply with the applicable standard of care adopted in Akins, thereby exposing them to an enhanced risk of injury beyond that inherent in the nature of the sport (see Siegel v City of New York, 90 NY2d 471, 484 [1997]). Furthermore, plaintiff, a young security guard, testified that he was directed to sit on the stool provided by the Yankees directly behind home plate throughout the game (cf. Maddox, 66 NY2d at 279). Concur—Friedman, J.P., McGuire, Moskowitz, Acosta and DeGrasse, JJ.