DILLON, Judge.
Stephen Victor Wheeler ("Plaintiff") appeals from a trial court order granting summary judgment to Central Carolina Scholastic Sports, Inc. dba Central Carolina Scholastic Baseball Summer League ("Defendant"). After careful review, we affirm the trial court's order.
I. Background
In June 2012, Plaintiff was attending his son's baseball game at a newly renovated field rented by Defendant.[1] Plaintiff was struck in the head by a foul ball while standing and talking with a friend behind a fence next to the bleachers near first base.
Plaintiff filed suit for negligence. Defendant moved for summary judgment. After a hearing, Judge Hill granted Defendant's motion for summary judgment. Plaintiff timely appealed.
II Standard of Review
We review a trial court's grant of summary judgment de novo . Forbis v. Neal , 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). "Summary judgment is appropriate when there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law." Builders Mut. Ins. Co. v. N. Main Const., Ltd. , 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (internal quotation marks omitted).
III. Analysis
Plaintiff contends that a special hazard exception to Cates v. Exhibition Co. , 215 N.C. 64, 66, 1 S.E.2d 131, 133 (1939) (sometimes referred to as the "BaseballRule ") applies and therefore bars summary judgment in favor of Defendant. We disagree.
"[U]nder established common law negligence principles, a plaintiff must offer evidence of four essential elements in order to prevail: duty, breach of duty, proximate cause, and damages." Estate of Mullis by Dixon v. Monroe Oil Co. , 349 N.C. 196, 201, 505 S.E.2d 131, 135 (1998).
Landowners, including baseball field operators, owe a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." Nelson v. Freeland , 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). Our Supreme Court held that baseball field operators "discharge [ ] their full duty to spectators in safeguarding them from the danger of being struck by thrown or batted balls by providing adequately screened seats for patrons who desire them, and leaving the patrons their choice between such screened seats and those unscreened."[2] Cates , 215 N.C. at 66, 1 S.E.2d at 133.
Furthermore, a baseball field operator is not required to provide screening in all of the areas where patrons may be during a game; rather, "[i]t is enough to provide screened seats, in the areas back of home plate where the danger ... is greatest, in sufficient number to accommodate as many patrons as may reasonably be expected to call for them on ordinary occasions." Erickson v. Lexington Baseball Club , 233 N.C. 627, 628, 65 S.E.2d 140, 141 (1951). "Spectator[s], with ordinary knowledge of the game of baseball ... accept[ ] the common hazards incident to the game ... and ordinarily there can be no recovery for an injury sustained as a result of being hit by a batted ball." Id. at 629, 65 S.E.2d at 141.
We have held that the Baseball Rule shields a baseball field operator from liability, even when a patron is struck in an unusual way by a batted ball, so long as the operator provides a screened section. Hobby v. City of Durham , 152 N.C. App. 234, 236-37, 569 S.E.2d 1, 2 (2002). See also Bryson v. Coastal Plain League , 221 N.C. App. 654, 657-58, 729 S.E.2d 107, 110 (2012) (concluding that summary judgment in favor of defendants was appropriate where patron was struck in an unscreened area along the third base line as other areas of the park were screened).
Here, it is undisputed that Defendant and the Board provided screened bleacher seats in the area behind home plate ("Home Plate Bleachers"). Also, Defendant and the Board provided screened bleacher seats along the first base line ("First Base Bleachers"). There is an area between the Home Plate Bleachers and the First Base Bleachers where patrons sometimes stand. There is no screening there. Instead, there is a gap between the screening protecting the Home Plate Bleachers and the screening protecting the First Base Bleachers. There is, however, a dugout and a six-foot high gate which leads to the field in the area between the screens. And there is a ten-inch gap between the gate and the screening in front of the First Base Bleachers (the "Gap"). Plaintiff was standing between the bleacher sections when he was struck by a batted ball that had traveled between the Gap. Plaintiff was struck in an unusual way, as was the case with the patron in Hobby . Hobby , 152 N.C. App. at 235, 569 S.E.2d at 1. However, there is no evidence that the screening that was provided by Defendant and the Board was defective. The ball simply traveled along a path where there was no screening and where there was no duty to provide screening. Accordingly, we conclude that Defendant did not breach its duty of care as a matter of law and that summary judgment was appropriate.[3]
IV. Conclusion
We affirm the trial court's order granting Defendant summary judgment as Defendant provided screened seating in the area behind home plate in compliance with the Baseball Rule and Plaintiff's injury was not the result of defective, unrepaired screening or fencing.
AFFIRMED.
Report per Rule 30(e).
Judge ELMORE concurs.
Judge ZACHARY dissenting by separate opinion.

Defendant assumed liability "for damages or injuries sustained by any person using the facilities during the rental" pursuant to its Facilities Use Agreement with the field owner, the Cumberland County Board of Education (the "Board").

A baseball field operator complies with the Baseball Rule set forth in Cates by providing adequate screened seating to patrons.

Plaintiff cites Correa v. City of New York, 66 A.D.3d 573, 890 N.Y.S.2d 461 (2009) in support of his argument. However, Correa is easily distinguishable. Unlike the screening in Correa, which was tampered with, the Gap did not create an "enhanced risk of injury beyond that inherent in the nature of the sport" of baseball. Id. at 575, 890 N.Y.S.2d at 463. Moreover, Correa is a New York decision, which is not binding on this Court. See Virmani v. Presbyterian Health Servs. Corp., 350 N.C. 449, 465, 515 S.E.2d 675, 686 (1999) (reaffirming general principle that authority from other jurisdictions is not binding on North Carolina courts).